May it please the Court, I'm Mary McComb. I represent Petitioner Daniel Pina. I guess I'd like to begin by taking questions from the Court if it has questions. Well, let me just ask, make sure I understood your, the pleadings that we just received. Right. I take it you are now abandoning the Shackling claim that you're conceding that he is procedurally barred from proceeding? No, that's not, wasn't the point of my pleading at all. It was a point, okay. Tell us where we are on that. Yeah. On that, the point was to point out to this Court some facts that it might not have been aware of in the Valencia case, and that is that another, pardon me, another panel had ruled that the underlying substantive issue, not the procedural issues at all, the underlying substantive issue, i.e., the Shackling, had been ruled against, Mr. Valencia had been ruled against, and Pina and Valencia are in an identical situation. So my point was the two. Valencia was actually the more dangerous of the two, or not? Does the opinion cover Pina? It puts the two men in the same situation and says that the Shackling was justified for both men. So the court rule, rule in this Court at the moment is that the Shackling opinion was not unconstitutional. Right. Now, Mr. Pina has, of course, never had the opportunity to present that issue to any court. But lots of people are barred by opinions that control their cases. That's right. And that was why the opinion that controls his case. I think we are conceding that the opinion does control the case. That's why I was inviting the Court to accept oral argument on the other issues rather than deal with these rather complex procedural issues, turn directly to the substantive issue. Right. Okay. Why don't you proceed to your substantive issue? Yes. This is the second set of issues is an issue about the prosecutor's duty to obtain a conviction only when it is consistent with the truth. What's the duty when the court tells him it disagrees and he must proceed? I believe the district attorney's duty at that point was either not to proceed or to proceed without the evidence with which he had so much problems. In other words ---- Well, I don't know whether you recall how our present Chief Justice got to be Chief Justice in California. There was a case called the Hillside Strangler case. Do you remember that? By reputation. Well, John Van de Kamp, who was district attorney, felt it was unethical for him to prosecute that case because of one of the witnesses that he had doubts about. Ron George was the trial court judge, and he disagreed with John Van de Kamp. And he told Van de Kamp, if you don't believe this is a case you should prosecute, we'll transfer the case to the State Attorney General. I don't remember who that was. Probably Dan Lundgren. In any event, the State Attorney General then prosecuted the case. Hillside Strangler was convicted. Ron George was ---- received a reputation as a true law and order judge and is now the Chief Justice.  Well, I'm not sure about California, but I think our point is that it's inconsistent with Federal law, with NAPU and Berger. NAPU says you can't knowingly use purgative testimony. Right. And that's what that prosecutor did. This prosecutor ---- remember how hard this prosecutor tried not to go forward with the case. He moved ---- Suppose he stepped aside and another prosecutor came in. I think we ---- Who didn't agree with him. I think that the case still shouldn't have gone forward. It's the ---- it's Vince Odesco, the district attorney, who did the investigation. Remember how hard he looks at this issue before he ---- This is a matter of judgment and opinion for a lawyer, right? I don't believe so, Your Honor. I also think it's a ---- in this record is evidence that shows not only that Vince Odesco believed that the evidence was false, that it actually was false. Why was it false? It's false because ---- well, I think what we have to say is that the conflict creates so much doubt about the credibility of the witness upon which the prosecution has to rely, and that's the powers, officer powers. When Officer Warren ---- So it's a credibility issue, not a falsity issue? Yes, that he's created so much doubt about his star witness that he can't go forward. He believes that ---- That's different from knowing that it's perjurious, that he's got to have doubt about his credibility. Is it the same as knowing he's committed perjury? I don't think he has to know that there's perjury. I think what the prosecutor did here was investigate to the best of his ability whether or not he could have confidence in the credibility of officer powers. He ---- So you said the rule is not knowing use of perjured testimony, but use of testimony about which you have doubt? Well, I think that we're drawing ---- we're taking the rule too far away from the case here. Yes, he doesn't have to know with mathematical certainty that the evidence is false. Vince Odesco, the district attorney, did everything he could to figure out whether or not he could rely on the testimony. Remember, he go ---- when he ---- when Officer Warren is uncovered, he goes and investigates ---- But relying on the testimony is different from, you know, whether you should rely on it because you have doubts about the credibility is different from knowing that it's false, isn't it? I think that under the circumstances ---- yes, it is, Your Honor, it is different. But under the circumstances here, we have a case where the prosecutor did everything he possibly could to know whether or not it's true, and he had so ---- remember, he actually uses the words, his confidence in his witness is shattered. He has no belief that he can go forward with this case and with ---- consistent with the truth, and that's his obligation, is to go only go ---- I understand the argument as to why that a conviction under those circumstances should be said to violate the due process clause. I understand what you're saying, that it's not only the knowing use of perjured testimony, but to take your words that if the prosecution's confidence in the witness is shattered and it still goes ahead, that it's ---- that should be said to violate due process. The problem is, in a HEDPA case, how do you tie that to a Supreme Court decision that holds your proposition? Yes. I ---- well, the cases we are relying on is NAPU. Which is knowing use of perjured testimony. Which is the obligation of the prosecutor to proceed to correct false testimony. In this case, this prosecutor had an obligation. If he was going to go ahead, that's ---- we're not conceding that he should have, but if he was going to go ahead, he had an obligation to present to the court all ---- and to the jury, I suppose, all the doubts he had, and he doesn't do that. He did present to the court his problems. Yes. Now, that's ---- in State court, it's much different, much more ---- it's not framed as a NAPU claim, of course. The court took it as whether or not there was sufficiency of the evidence to proceed. The court decided that what should happen here is that the prosecutor should throw everything in, even the evidence that he had doubts about, and that the jury should see what stuck. Our position is that's inconsistent with NAPU. But if I could go back, NAPU ---- we're relying on NAPU, but also on Berger v. United States. Berger v. United States articulates the principle that the prosecutor may only obtain a conviction when that ---- when ---- may only attempt to obtain a conviction when it's consistent with the truth. Now, did the prosecutor ---- did honestly report to the judge, didn't he? Yes, he did. And the judge said to him, well, you go back and think about whether, consistent with your ethical values, you can prosecute it. And if not, we'll assign it to another prosecutor. Remember, he does that twice. The judge ---- the district attorney approaches once, says, I have doubts. The judge says, I don't want to. The district attorney comes again and says, I have doubts. And the ---- I must say, I thought that it was unusual, remarkable, that the district attorney was so ethical, so concerned, and did what he could. Yes. Now, after the judge told him to consider whether it really violated his ethical responsibility, then wasn't there a 5-day gap when he ---- There's a weekend, yes. He went away, and then he apparently resolved the problem. Well, I don't ---- it doesn't ---- Well, we don't know on what basis. Right, right. And you have to ---- the prosecutor has decided that he's going to do what the judge says, and he does what the judge says. The judge says, throw everything out, and we'll see what sticks. Now, and there's a couple of examples of how the prosecutor has gotten away from his obligation to prosecute only consistent with the truth. For example, the inmate witness, Clark Duran. At the beginning, when he talks to the judge about Clark Duran, he tells the judge, I think Clark Duran is lying. I'm not going to put him on. Clark Duran has some evidence about who was in the cell at the critical moment. And the judge says ---- pardon me, the district attorney says, I'm not going to go forward with that evidence because I don't believe it. Later on in his rebuttal case, the prosecutor puts it on. Now, he ---- there's nothing that's happened in the record that would make you believe that Clark Duran is all of a sudden credible when he wasn't credible before. What's happened is the prosecutor has done what the judge said. He's abandoned his responsibility to prosecute only consistent with the truth and is throwing it all in there and seeing what's the role of the jury under your construct. If the jury is the ultimate trier of fact, and if we were to extend the rule, if we could, under AEDPA, by saying the NEPU rule should extend to cover this situation, then it seems to me that any time that a lawyer, whether a prosecutor, well, I guess it'd have to be a prosecutor or a NEPU, any time that the prosecutor was aware that there were two witnesses, let's say a prosecution witness and a defense witness, who were testifying to a completely contradictory version of the facts, if the prosecutor for whatever reason thought that the defense witness was more credible, he wouldn't be able to proceed under your theory. Well, I think it depends upon how critical the issues about which those witnesses are testifying. We're not saying that every ---- Let's assume that we're just ---- with my hypothetical that they're just as critical as they were in this case. Then I think that a prosecutor ---- if the prosecutor believes the defense witness, if that's more consistent with the truth, I think the prosecutor has an obligation not to go forward. Why do we need a jury? Well, we need a jury to ---- If a jury is to resolve credibility concerns, what's the role of the jury in your system of justice? Right. I don't ---- the jury does resolve credibility issues, but it has to be framed by the ---- Your system, they couldn't, because they'd never hear it. The prosecutor couldn't go forward. The prosecutor ---- we're not saying the prosecutor can't ever go forward when there's contradictory evidence.  You're saying the prosecutor can't go forward when he thinks his witness is lying. Precisely, Your Honor. But I wouldn't say ---- I think I would more narrowly frame it than that to maybe take care of some of your concerns. And that is, it has to be about stuff ---- about facts that are core to the case. And that's what we have here. Well, let's go back to the Pius's question. Honestly, I have difficulty understanding just what happened here and why it really makes that much of a difference. Right. And determining who is telling the truth, who isn't, and who's mistaken. Right. I mean, these seem like the kind of events over which you could have conflicting recollections. Why is it that you think it's clear that the prosecution's witnesses were lying? I think what happened was, is that Vince Odesco, the district attorney, after Lauren ---- remember, the issue is over whether or not the cell door could have been locked at the time of the crime. The prosecution critically depends on the cell door being locked, because it has contradictory evidence that there's only two people in there. Right. And they're prosecuting all ---- they're prosecuting both Mr. Valencia and Mr. Pena. The defense is that it was a fight between Mr. Pena and the victim, and Mr. Valencia enters after the door, after the fight. And that's only possible if the door is open. And so this ---- the prosecutor himself says that this is his theory, and he says that I need that door to be locked in order to go forward on the case. When Mr. Lauren comes up and says, no, it was open, I'm sure it was open, he investigates. He goes to the prison. He stands where Officer Lauren was standing. He says, I don't think Lauren was lying. He goes and he talks to people at CDC. Lauren's an okay person. And he decides that he cannot rely on the evidence from the other officer, Officer Powers, that Powers was sure that the door was locked. How do we know what the time of the incident was? How do we know what time the incident was? I'm sorry. In relation to whether the door was locked or not. Nobody knew there had been a killing until they saw the results. Right. Until another officer goes down and finds the victim, who is badly wounded. He's not. He dies a number of months later. At that time, Valencia is in the cell. That's right. But remember ---- How do we know the relationship between when Valencia got in the cell and when the stabbing occurred? Well, if the door was locked, Valencia locked the ---- what the prosecution claims is that the door was locked the entire time so that it was ---- Entire time until what? Until Valencia was in the cell? I'm sorry. I'm sorry. The entire time from the time that the inmates are all released at 9 o'clock in the morning, most of them go off, the prosecution's theory is that Valencia goes in, the officer locks the bar so the door is locked and shut, Valencia is in there. The problem with the prosecutor's case ---- Forget that part. Sometime the door obviously is unlocked and Valencia gets in. Yes. The door is unlocked when all the inmates are released at the same time. The way this works is ---- Under your theory, when did Valencia come in? When was the door unlocked to permit him to come in? The door is unlocked after all the inmates are released and not relocked. They were going to breakfast or something, weren't they? They were all going out to the yard for the day. So how do we know that after that time, under your theory, when it was when Valencia came in, how do we know the killing didn't take place then? That the killing took place on the ---- Under your theory, Valencia came in at a different time than for the prosecution. That's right. How do we know that under your theory, you know that Valencia went in at some point the door is unlocked, at some point Valencia goes in. That's right. And how do we know that the killing occurred before then? Because Officer Felix goes down the first time and looks in and sees the injured Valencia comes in after Felix sees that the inmate is injured. Have I made that clear? Yeah, except that it's not clear from Felix's testimony that Valencia couldn't have been in the cell and he saw two people. That's right. That's a very big problem for the prosecutor. I just don't know why we think that we know Valencia is in the cell, we know the killing takes place, and I don't know how under any theory we're sure that the killing took place before Valencia got there. Well, before Valencia got there, the defense theory is that he came in later, right? And is that important because the defense theory was self-defense? That's right. And it's a better defense if it's a one-on-one as opposed to two-on-one. It's the only defense, right. All right, I understand. Right. The defense is that Daniel Pena testifies that it was self-defense and that Valencia came into the cell after the fight is over. When Valencia came in, he pinged and hit him in the face. That's right. Because he didn't know who it was, so he didn't. Right. He just hits people in the face when they come in, whoever they, maybe a guard, we don't know who it is. But because someone came in, he hit him in the face, and that's how Valencia got the injury, not the assault on the now deceased. Okay, you've got about a minute. Thank you. You'll want to save some time. Thank you very much. Okay. Good morning, Your Honor. My name is David Andrew Eldridge, Deputy Attorney General for Respondent. And Ms. Martin? I think the responsibility of a prosecutor is if he believes his witness is lying. It's to put that in front of the jury. The you were asking what is the role of the jury, Justice? I didn't ask what the role of the jury is. I'm sorry. I was asking what is the role of a prosecutor if he believes his witness is lying? He merely has to put it in front of the jury. Oh, you should present testimony of witnesses you believe are lying. With all due respect, Your Honor, this has been settled. Give me respect. I just want to know your position. I just. Do you believe that prosecutors should base a case on the testimony of people they believe are lying? I believe it is not the duty of the prosecutor to make the decision who's telling the truth or lying under the Constitution. The United States Supreme Court has made clear that you cannot distinguish a claim of presenting perjury testimony from suppression of evidence. That's to say, if the defense and the court have all the evidence that the prosecutor has, including the evidence that supposedly shows that one witness is committing perjury, you simply don't have a due process violation. Are you in the Attorney General's office? I am. Is that the position of the Attorney General? The Attorney. Just a minute. Sorry. Mr. Lockrie's position is the prosecutors who believe their witnesses are lying should put them on the stand? With all due respect, Your Honor. With all due respect. The problem is, Your Honor. The problem is, Your Honor, you want me to phrase it in the way you want to, and I'm not going to. Okay. Don't answer at all if you don't want to. Well, I have an answer. I want your answer. I understand. I'm not giving you the answer. I told you to put it in the back of the tray. Wait a minute. I understand you respect me greatly, and you don't have to tell me that with the answer to each question. I'm just asking you what the position of your office is. It's not hard to say yes or no, and as I understand Mr. Lockrie's position, it's that prosecutors should put on key witnesses that they believe are lying. Is that correct? I don't like the way you phrased it. Okay. Don't answer the question, and I won't ask you any more questions. I think I understand the position of the Attorney General. Well It's very, very interesting, and I'm sure Mr. Lockrie will reaffirm that. Sure. Your Honor, the United States Supreme Court has said a claim of using perjury testimony simply may be reframed and asserted as a claim of suppression of the evidence upon which the knowledge of perjury rested. That is cited at our brief, page 63. It is footnote 34 of Imler v. Pacman, which was issued 17 years after Napoo. That means that so long as everyone knows the evidence which the defense claims later shows it's perjury, including the jury, and the jury having heard that testimony still believes the evidence which is claimed to be perjury, it means the jury, which is the trier of fact, has decided it wasn't perjury. And that's the end of it. Even if one of the prosecutors on the case thought it might be. Mr. Eldridge, how do you read Napoo to respond to Judge Reinhardt's question? I have to read it in light of Imler v. Pacman, which said a distinction was one of the justices tried to make a distinction between suppression of the evidence, which supposedly shows it's perjury, and presenting perjury testimony. And the Court said the distinction is not susceptible of practical application. To say that the prosecutor presents evidence that it knows it's perjury is really saying they have special knowledge that it's perjury, not just that some of them. He did have special knowledge in Napoo, didn't he? He knew that a promise had been made to the State's star witness. And it wasn't disclosed. And when that witness testified at the trial and he was explicitly asked, were you given any promises or assurances, and the witness lied and said, no, the prosecutor stood mute and never corrected the record or brought to the attention of either defense counsel or to the Court the impeaching information which would have proven conclusively to the jury that the witness had a motive to lie. Which is why you have what can be phrased as a Brady problem. That was specifically the case. Would you agree that the Supreme Court said in Napoo that that is a fundamental due process violation if a prosecutor stands mute under those circumstances, knowing that perjured testimony by his star witness has just been rendered in the trial? I agree when you have the fact that he stood mute. That is, it was not disclosed. So it is a due process. You agree that's a constitutional violation? If it is not disclosed, if the prosecutor does not disclose the evidence which would then, yes, you have a due process problem. That is a Brady problem. That is a ---- So then is your position here that because it was fully disclosed and the defense had the opportunity to vigorously cross-examine the correctional officers, and I assume that there was vigorous argument in closing and the jury was told you're going to have to resolve this conflict, that that takes it out of the purview of the Napoo rule and it is not the presentation of perjured testimony? Have I fairly summarized your position or do I misunderstand? No, I think you understand that the only ---- I don't know. I'm not sure anybody's going to agree with me. The only thing I would modify is it is presentation of evidence that the prosecutor has special knowledge. That is to say, any time a prosecutor ---- Special knowledge meaning he's the only one in the courtroom who knows it. Yes. And in this sense, you can always have two conflicting witnesses. If the defense likes what the defense, the better witness says for them, they will always claim, well, that means the other one is committing perjury. And when they say the prosecutor is aware of the witness that they like, well, then that means a prosecutor was aware that the witness who presented incriminating testimony was committing perjury. Well, that's always for the jury. It's the prosecutor's job, no matter how strongly he believes one witness or the other ---- You mean any time there's a ---- Any time someone comes to the prosecutor and says Joe Smith committed the murder, he's got an obligation to present that case to a jury, even if there are ten witnesses who say he's lying? We're not talking in terms of what the prosecutor ---- when the prosecutor is obligated to prosecute, but when under the Constitution he's obligated not to. When is he obligated not to? As long as there's somebody who says the man did it. Why don't we let the jury decide? Isn't that the jury's job? Perhaps I was imprecise. If you are asking me whether the prosecutor is allowed under the Constitution to prosecute whenever he's got a witness who says the defendant committed the crime, I think the answer is yes. And it's up to the defense to ---- It's not an ethical violation for him to do that if he believes that the witness is lying and ten others are telling the truth. Does he have an ethical ---- If we are constraining our view to what the Constitution requires in terms of ethics No, I asked you what a prosecutor should do. I didn't say prosecutors are compelled only to do what the Constitution requires. I see. Then I would say that I do not have an opinion before you on that point because it's not part of this case. You only are going to answer questions that you think are part of the case. I have not prepared a detailed review of what his ethical duties are apart from the constitutional issue because that's all I was coming here to argue, Your Honor. Well, it would be nice if prosecutors knew about ethics and didn't have to prepare specially for that, particularly the Attorney General's office. Thank you, Your Honor. You're very welcome. Is there anything more? I have no further points I wish to make. Thank you. Thank you. Just a quick point about whether or not Imler somehow limited NAPU. I think that NAPU still stands for the proposition that it is – violates due process to obtain a conviction based on perjured testimony. This is independent of whether or not the prosecutor has special knowledge. I think that to say otherwise is to ignore other Supreme Court precedent, and that's the Supreme Court's law about the special duty of the prosecutor to prosecute only when it's consistent with the truth. Let's assume we have a case in which the prosecutor, if you're willing to answer a hypothetical question, let's assume we have a case in which a prosecutor does not know perjury is – testimony is perjured. He doesn't know it, but in fact, we later discover that it is – is perjured. And that's the sole basis of a conviction. Right. Is that a due process violation? I think it is, Your Honor. And is there a Supreme Court case to that effect, so that if it – under AEDPA, the Federal court could set aside that conviction? We did raise a separate claim about the prosecution of this case as false testimony. The case I came up with was Mayo v. Durley. I think it is a difficult case to be made that – and that's the best we can do. I also think you have to cite maybe Estelle v. McGuire, that it's so fundamental to the right to a fair trial that it's incorporated with a due process clause. It would be difficult to say there was clearly established Supreme Court law, wouldn't it? I think so, Your Honor. I think you have to retreat to the most fundamental notions in our Constitution and I would cite them. Well, there's a Ninth Circuit case that says that. Yes, there is, Your Honor. All right. Thank you very much. Thank you. The case just argued will be submitted.
judges: Reinhardt, Paez, Tallman